(Decided 13th June, 1888.)

---

THE WESTERN TELEGRAPH COMPANY, OF BALTIMORE CITY *vs*. THE BALTIMORE AND OHIO RAILROAD COMPANY, and others.

### *Res judicata.*

A decision of the Circuit Court of the United States, in regard to the construction of a Maryland statute, is conclusive in any case involving the same question between the same parties or their privies.

Western Telegraph Co. *vs.* Balto. & Ohio R. R. Co., *et al.*

No different state of facts will authorize the Court of Appeals to change that construction in a case between the same parties or their privies.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, and BRYAN, J.

*John E. Semmes,* and *Frank P. Clark,* for the appellant.

*Wm. Rush Taggart,* for the appellee.

STONE, J., delivered the opinion of the Court.

In 1877, the complainant, the Western Telegraph Company of Baltimore City, filed a bill against the Baltimore & Ohio Railroad asking, substantially, that the road might be compelled to carry out a certain agreement which it had made with the complainant. In 1885, the complainant filed an amended bill making other defendants, and among them the Western *Union* Telegraph Company.

In 1877, and about a month before the filing of the original bill above referred to, the Western *Union* Telegraph Company filed a bill against the Baltimore & Ohio Railroad, in the Circuit Court of the United States for the district of Maryland, claiming the same relief against the road that the Western Telegraph Company of Baltimore City afterwards did; the ground of the claim of the Western *Union* Telegraph Company being that of assignee of the rights of the Western Telegraph Company of Baltimore City.

This latter case was argued and decided by the Circuit Court of the United States for the District of Maryland in May, 1884.   20 *Fed. Rep.,* 572.   An ap-

peal was taken to the Supreme Court of the United States, but which appeal, as we are informed by the counsel for the appellant in this case, has since been dismissed. At the argument of this case, the following letter was addressed to the Court and filed:

To the Honorable, the Judges of the Court of Appeals of Maryland.

Since the appeal has been pending in this Court, an arrangement has been consummated, under the terms of which the purposes of this suit have been in part attained, to wit: the recovery of the possession of the lines of telegraph from Baltimore to Wheeling, West Virginia, by the Western *Union* Telegraph Company; which lines of telegraph, it is claimed in this suit, are the property of the Western Telegraph Company of Baltimore City, by it leased to the American Telegraph Company, which latter company was absorbed by the Western *Union* Telegraph Company, and which were, on or about the 10th of March, 1877, seized by the Baltimore & Ohio Railroad Company, and by that Company held until, under the arrangement mentioned, the Western *Union* Telegraph Company has been put in possession thereof.

The securing to the Western *Union* Telegraph Company, as lessee of the Western Telegraph Company of Baltimore City, the possession of the said lines is one of the two principal objects sought to be attained by this suit—the other being to secure an accounting between the Baltimore & Ohio Railroad Company, the Western *Union* Telegraph Company and the appellant, the Western Telegraph Company of Baltimore City.

In response to the demand contained in the telegrams, copies of which are appended hereto, the altered state of facts is brought to the attention of the Court.

(Signed,)     JOHN E. SEMMES,

*Attorney of record.*

Among the telegrams referred to is the following, dated New York, Jan. 16, 1888, and addressed to the counsel of record for the appellant in this case :

"The effect of the recent Baltimore & Ohio purchase by the Western Union is, we suppose, that the original bill filed by the Western Telegraph Company no longer presents a genuine issue on which we can allow the Court, without information of that fact, to proceed. In view of the possible effect of this upon your amended bill, we wish the cause continued until you can revise your position.

(Signed,)        Dillon & Swayne."

Another telegram dated 17th of January, 1888, and addressed to the Clerk of this Court, is as follows :

"As one of the parties to the suit of the Western Telegraph Company of Baltimore against the Baltimore & Ohio Railroad Company, the Western *Union* Telegraph Company begs to suggest to the Court of Appeals that the interest in the controversy of the company last named has completely changed, by reason of its having purchased from the railroad company the entire property and rights which are the subject-matter of the suit. The interest of certain *minority* stock holders of the Western Telegraph Company, who have, by an amended bill, become co-complainants with the Western *Union* are now in fact adverse only to the Western *Union*. On that account the Western Union respectfully prays that the cause may be continued until the persons of the parties are revised. No controversy in fact remains except with these *minority* shareholders who are only incidentally parties to the suit.

[Signed]        Dillon & Swayne,
            *of Counsel.*"

From these letters and telegrams it seems that all contest over the material such as poles, wires, &c., originally claimed as belonging to the Western Telegraph Company of Baltimore City is at an end.

It further appears that while the case at bar has been pressed in argument, and the name of the Western Telegraph Company of Baltimore City has been used, the suit is in reality in the interest of certain *minority* shareholders of the Western Telegraph Company of Baltimore City, who desire an accounting of the Baltimore & Ohio Railroad Company with their Company of certain matters claimed by it. We must presume that the Western Telegraph Company of Baltimore City have allowed their minority share-holders to use the corporate name of the Company in order to further their views. Whether in suits like the present, *minority* shareholders can be allowed to prosecute the case, even with the consent of the Board of Directors, and for such purpose to use the corporate name, we do not think it important in this case to decide.

But as this case has been fully argued upon another question, and as the decision of that may prevent other litigation as well as settle the present case, we give our views upon it. The question which these minority shareholders now want decided is the true construction of an agreement entered into by the Western Telegraph Company and the Baltimore and Ohio Railroad Company in the year 1853.

By the terms of that agreement the Baltimore and Ohio Railroad Company granted to that telegraph company a license to erect and maintain a line of telegraph upon its road *as long as said telegraph company should exist as a telegraph company.*

The Western Telegraph Company was incorporated by an Act of the General Assembly of this State, in

1847, and its charter expired in 1877. In 1877 it became re-incorporated under the general incorporation law of the State by the name and style of the Western Telegraph Company of Baltimore City.

The Baltimore and Ohio Railroad Company in this state of the facts contended that the corporate existence of the Western Telegraph Company ended with the expiration of its special charter in 1877, and, therefore, the license then ended. The telegraph company, on the other hand, contended that by its re-incorporation under the general law of the State its corporate existence was continued for forty years, from the date of the expiration of its original charter. This question was the main question presented in this and also in the case of the *Western Union Telegraph Company against the Baltimore and Ohio Railroad.*

Without going into a minute detail, it is sufficient for the purpose of this case to say, that after its agreement in 1853 with the Baltimore and Ohio Railroad, and before the expiration of its original charter in 1877, the Western Telegraph Company leased all its property and rights to the American Telegraph Company who, in turn, assigned its lease to the Western *Union* Telegraph Company, so that, in 1877, at the time of the filing the two bills referred to, the Western Union was the lessee of the Western Telegraph Company.

As we have before stated the case of the Western *Union* Telegraph Company was tried in the Circuit Court of the United States in May, 1884, before Judges WAITE and BOND, and that Court decided that the Western Telegraph Company of Baltimore City, formed under the Act of 1868, was, in fact and in law, a different corporation from the Western Telegraph Company incorporated in 1847, and that, therefore, the license obtained from the Baltimore and Ohio Railroad in 1853, expired by its own limitation in 1877, when the origi-

nal charter of the Western Telegraph Company expired.

The answer of the Baltimore and Ohio Railroad Company to the amended bill in this case plead this decision in bar of the suit as *res judicata*. As the Western *Union* Telegraph Company was and is, in law and in fact, the lessee of the Western Telegraph Company, this plea is unquestionably good, *unless indeed some new facts developed since the decision in that case* should authorize us to disregard that decision. The law and the cases upon which it is founded will be found well stated in 1 *Herman on the Law of Estoppel and Res Judicata*, 99, where he says:

"A judgment rendered by a Court of competent jurisdiction  *  *  *  *  which is unreversed or unannulled, is conclusive upon the parties to the controversy and their privies, and they are forever afterwards estopped or barred from reviving it in any new proceeding."

As the Western *Union* Telegraph Company was a lessee, and therefore one of the privies of the Western Telegraph Company, that decision is a flat bar to this case *unless the existence of new facts unknown to the Court who made that decision can now be brought to the attention of this Court.*

The appellant insists that there are new facts now brought to the attention of this Court that will authorize a reversal of the decision of the Circuit Court of the United States.

We may well admit that where a decision is dependent *upon facts*, a new and different state of facts may well authorize a Court to decide differently.

But the decision of the Circuit Court of the United States rests and depends, upon the construction of the Act of 1868. There was no question as to the contract of 1853. That contract provided in most unmistakable

terms that the license should continue as long as the "Western Telegraph Company should exist as a telegraph company;" when, therefore, *it* ceased to exist the license expired by its own limitation. Now the Circuit Court of the United States decided that its existence expired in 1877, and that it was not continued by its new charter obtained under the Act of 1868. This was the decision of the Circuit Court, a Court of competent jurisdiction, between the privies of these parties, upon this Act of Assembly. No different *state of facts* will authorize us to change the construction of an Act of Assembly *between the same parties or their privies.* *Kolb vs. Swann,* 68 *Md.,* 516, and cases there cited.

Such construction of the Act of Assembly may not be considered binding in any case involving the same question between *other parties.* But between the same parties or *their privies* it is absolutely conclusive. Litigation would be endless were it otherwise.

The case of *Sprigg vs. Western Telegraph Company, et al.,* 46 *Md.,* 67, was much relied upon by the appellant as placing a different construction upon the Act of 1868, from that placed upon it by the Circuit Court of the United States. But upon a careful examination of that case, it did *not* decide the question whether a corporation formed under the Act of 1868, by the stockholders of an old company, was a *new company* or simply *a continuance of the old company.* This Court there decided that there was nothing in the original Act of incorporation to prevent the stockholders in that company from organizing under the Act of 1868. Whatever may be the decision of this Court, when the question is directly presented, between other parties, the decision of the Circuit Court of the United States must control us in this case, it being between the same parties, or what is the same thing, their privies.

The decree of the Circuit Court of Baltimore City dismissing the bill will be affirmed with costs.

*Decree affirmed.*

